60 N.Y.2d 22 (1983)
Gladys V. Shine, as Administratrix of The Estate of William J. Shine, Jr., Deceased, Appellant,
v.
Duncan Petroleum Transport, Inc., Respondent, and Consolidated Petroleum Terminal, Inc., et al., Appellants. (Action No. 1.)
Helen W. Rittenhouse, Individually and as Administratrix of The Estate of Charles W. Rittenhouse, Jr., Deceased, Appellant,
v.
Consolidated Petroleum Terminal, Inc., et al., Appellants, and Duncan Petroleum Transport Corp., Respondent. (Action No. 2.)
Court of Appeals of the State of New York.
Argued June 1, 1983.
Decided July 12, 1983.
Alan J. Firestone and Donald L. Marcovitz for Gladys V. Shine, appellant.
Edgar T. Schleider for Helen W. Rittenhouse, appellant.
Jerome J. Margolies and Raymond Green for Five Boro Fuel Transport, Inc., appellant.
Robert F. Van der Waag for Consolidated Petroleum Terminal, Inc., and others, appellants.
Wade T. Dempsey and Edward J. Hart for respondent.
Chief Judge COOKE and Judges MEYER and SIMONS concur with Judge JONES; Chief Judge COOKE concurs in a concurring memorandum; Judge JASEN dissents and votes to affirm in a separate opinion; Judge WACHTLER taking no part.
*25 JONES, J.
Although the Workers' Compensation Board has primary jurisdiction to determine the applicability of the Workers' Compensation Law when an employee brings an action against one who may be his employer, in the unusual circumstances of this case it was an abuse of discretion on the part of the trial court to grant the employer a stay of the trial of the common-law action brought on behalf of the employees pending reference of their claims to the Workers' Compensation Board.
Appellants' decedents, William H. Shine, Jr., and Charles W. Rittenhouse, Jr., suffered fatal injuries in an explosion and fire which occurred on April 28, 1976 at a gasoline terminal in Setauket, Long Island, while gasoline was being transferred to a tanker-trailer. Rittenhouse died May 6 and Shine, May 7, 1976.
Claims were submitted by appellants administratrices under the Workers' Compensation Law on the theory that at the time of the explosion the decedents were employees of Five Boro Fuel Transport, Inc. The Workers' Compensation Board determined that both decedents were employees of Five Boro and made awards with respect to both decedents, *26 as to Rittenhouse on December 29, 1976 and as to Shine on July 5, 1977. Based on the determinations of the Workers' Compensation Board the court dismissed the present common-law action as to Five Boro by order dated November 14, 1978.
In July, 1981, on the morning when jury selection was to begin in this action, Duncan Petroleum Transport, Inc., another defendant, moved for a stay of all judicial proceedings pending a determination by the Workers' Compensation Board whether the decedents were also employees of Duncan as it asserted, in which event the Workers' Compensation Law would likewise constitute a bar to the common-law action against Duncan. By order dated September 3, 1981 Special Term granted the motion for a stay pending determination by the Workers' Compensation Board. The Appellate Division affirmed, without opinion. We now reverse, holding that in the circumstances disclosed in this record it was an abuse of discretion to have granted the stay.
In an affidavit submitted in support of the motion for a stay it was asserted categorically that at the time of the explosion there were two corporations, Duncan and Five Boro, "whose stockholders were identical, whose management was identical, and whose offices were identical". In his affidavit, also submitted in support of the application, Wesley Charles Wright stated that he was president of both corporations, that "for all intents and purposes the firms were considered a single entity", and that the decedents were "considered employees of both corporations, or perhaps more correctly, the corporations were considered a single entity that employed all of the involved employees". Wright had been examined before trial in the present action on October 13, 1978 and then raised no question as to the bar of workers' compensation; indeed he testified at that time that neither of the decedents was an employee of Duncan.
We held in O'Rourke v Long (41 N.Y.2d 219), as acknowledged by both courts below, that the Workers' Compensation Board, as the administrative agency to which the Legislature had entrusted the responsibility, has primary jurisdiction to determine the applicability of the Workers' *27 Compensation Law. Thereafter, we recognized in Murray v City of New York (43 N.Y.2d 400, 407) that, while the defense of workers' compensation could be waived, leave to amend pleadings to include such defense should be freely granted, even in midtrial, in the absence of operative prejudice (id., at p 405). In the present instance, however, we conclude that it was an abuse of discretion to grant the stay of the common-law proceedings pending referral to and determination by the Workers' Compensation Board of the claims arising out of the event of which this common-law action is grounded.[*]
In this case, by its own admission, the officers and management of Duncan were the same as those of Five Boro; indeed it is unqualifiedly asserted that the two corporations constituted a single entity. Duncan's alter ego-in-form participated in the workers' compensation proceedings in 1976 and 1977 in which the employment status of the decedents was at issue. Thereafter Duncan was served with the original complaint in the present action in March, 1977 and with the amended complaint a year later, to which latter it served an answer in May, 1979. For it, having been fully acquainted with the factual and legal aspects of each of the two claims arising out of the explosion of April, 1976, to have waited more than two years longer and until the jury was about to be drawn in the common-law action to seek a stay and then for the first time to assert the primary jurisdiction of the Workers' Compensation Board is unacceptable. Appellants, having prepared and being ready to proceed promptly to trial of the common-law action, suffered the "operative prejudice" to which we referred in the context of a motion to amend *28 the pleadings in Murray v City of New York (43 N.Y.2d 400, 405, supra). In these circumstances it was an abuse of discretion for the trial court to have granted the stay of proceedings.
Accordingly, the order of the Appellate Division should be reversed, with costs, the motion for a stay denied, and the case remitted to Supreme Court for trial.
Chief Judge COOKE (concurring).
I concur in the majority's reasoning and result. There is an additional ground for reversal, however. Five Boro was already determined by the Workers' Compensation Board to be the decedents' employer. Duncan Petroleum claims that it was a coemployer because it and Five Boro were merely alter egos. Thus, the only question to be resolved is the relationship between the two companies: if alter egos, then Duncan Petroleum is an employer; if not alter egos, then Duncan Petroleum is not an employer. In short, the issue here is not "the availability of [workers'] compensation" as such (O'Rourke v Long, 41 N.Y.2d 219, 228), but rather the legal identity of two corporations. Deciding whether companies are alter egos, so that it is appropriate to pierce the corporate veil, is a task for which the courts are well suited, and as to which there is no need for mandatory deferral to the board in the circumstances here.
JASEN, J. (dissenting).
The court holds today, almost casually, that both courts below had abused their discretion, as a matter of law, in staying further proceedings in this action pending a determination by the Workers' Compensation Board as to whether plaintiffs' decedents were employees of defendant Duncan Petroleum Transport, Inc., at the time they suffered injuries resulting in their deaths. Because I cannot agree that the courts below abused their discretion, especially in light of our clear pronouncements in Murray v City of New York (43 N.Y.2d 400) and O'Rourke v Long (41 N.Y.2d 219), I must dissent.
In O'Rourke v Long (supra, at p 221), we stated: "The initial question to be resolved whenever a defense of workmen's compensation is presented is whether the plaintiff has a right to bring a plenary action. If the right to sue the employer has been stripped away by workmen's compensation *29 coverage, it is an arrogation of jurisdiction to consider a tort complaint on its merits." This clear language conveyed to the Judges below that preliminary factual questions, such as we have here, which will determine whether the Workers' Compensation Board or the courts are the proper forum to adjudicate a claim should be resolved prior to any plenary trial. Thus, we held that whether the potential plaintiff was an employee was usually a question of fact for the Workers' Compensation Board (O'Rourke v Long, supra, at p 224, citing Matter of Gordon v New York Life Ins. Co., 300 N.Y. 652, 654), and the proper course in deciding whether the plenary action could proceed would be to "await a conclusive determination by the Workmen's Compensation Board." (O'Rourke v Long, supra, at p 224.) For a court below to disregard such a positive and fixed rule of law would have been not only an abuse of discretion, but also a mistake of law.
We recognized in our O'Rourke holding that the Legislature had chosen to make workers' compensation an employee's exclusive remedy against the employer. The policy embodied in this legislative determination was that both the employer and employee should have a forum within which to seek a swift resolution of any claim between them. The Workers' Compensation Board additionally supplies a sure source of benefits for the employee while assuring the employer that the cost will be regulated and stable. But perhaps most significantly, particularly in today's complex business world, the Workers' Compensation Board provides the expertise necessary to properly and uniformly administer this technically based program and assure that the Legislature's goals are fulfilled. These policy reasons support beyond cavil our fixed rule of law that the Workers' Compensation Board, and not a civil jury, is the proper body to determine whether the defendant in this case was an employer of the decedents.
The majority appears to agree to the extent that they believe primary jurisdiction exists in the Workers' Compensation Board, but in this case they would allow a jury to decide the factual question of whether defendant is an employer within the meaning of the Workers' Compensation Law because of what they term defendant's unacceptable *30 conduct in waiting until the eve of trial to assert the "defense" of workers' compensation. I cannot agree that this delay, even if it was shown to be attributable to the defendant, should effectively remove what has previously unequivocally been held to be the exclusive jurisdiction of the Workers' Compensation Board. The assertion by the defendant that it is an employer raises a factual question which should properly be resolved by the Workers' Compensation Board. This is particularly true because the factual question is not whether the defendant is an employer as that term is defined in the common law, but rather whether defendant is an employer within the meaning of the Workers' Compensation Law. (Workers' Compensation Law, § 2, subd 3.) As the agency established to interpret these statutes in order to effectuate the legislative policy in a uniform manner, the Workers' Compensation Board is the proper forum for the resolution of this issue. This is especially so when the resolution of the factual question potentially involves a complex employment relationship such as the one alleged to have existed in this case.
It may be argued, as the majority appears to, that despite the strong policy favoring a deferential policy on the part of the courts to the Workers' Compensation Board, and absent a showing of prejudice, it is, in some manner, unfair to allow the defendant to raise this jurisdictionally critical issue immediately before trial. The short answer to that argument is that in Murray v City of New York (43 N.Y.2d 400, supra), we unanimously reversed the Appellate Division for holding that "the trial court improvidently granted the city's motion to conform the pleadings to the proof at the late stage [during trial, as opposed to before trial in this case] at which the workmen's compensation defense was first interposed." (Murray v City of New York, 54 AD2d 942, 943.) In that case, we adhered to the rationale of O'Rourke v Long (supra) and held that the pleadings could be amended at any time prior to the entry of a final judgment to raise a defense of workers' compensation coverage and that any motion to amend should be viewed liberally by the courts below in exercising their discretion. (CPLR 3025, subd [b].) In addition, we clearly restated the *31 O'Rourke rule that "[w]orkmen's compensation is an exclusive remedy as a matter of substantive law and, hence, whenever it appears or will appear from a plaintiff's pleading, bill of particulars or the facts that the plaintiff was an employee of the defendant, the obligation of alleging and, in any event, of proving noncoverage falls on the plaintiff." (Murray v City of New York, 43 N.Y.2d 400, 407, supra.)
It follows logically that it is within the court's discretion, to be exercised liberally, to stay the proceeding until such time as the Workers' Compensation Board has resolved that particular question of fact. While this may work some hardship in a case where the trial has begun, I cannot agree with the majority (at p 27) that plaintiffs in this case have necessarily suffered the "`operative prejudice'" referred to in Murray v City of New York (supra, at p 405). In this case, there was no finding of prejudice to the plaintiff and it is beyond our power to make such a finding. Furthermore, greater prejudice may result to both sides if after going through the time-consuming and expensive process of trial it is determined by the trial jury that defendant is an employer and the plenary action is barred. (O'Rourke v Long, supra, at p 221.)
Finally, whether a stay should have been granted is, particularly in these circumstances, a question of discretion. We previously indicated that discretion should be exercised liberally to allow amendments to the pleadings and I believe the standard for the granting of a stay should be as liberal to avoid conducting what may be determined to be a useless trial. By holding that the Trial Judge and the Appellate Division in this case abused their discretion as a matter of law, the majority is in reality merely substituting its own discretion for that of the courts below. I cannot agree that given the strong policy behind the Workers' Compensation Law, as we have made clear in our O'Rourke and Murray decisions, it was an abuse of discretion to grant the stay pending resolution by the Workers' Compensation Board of a question which is clearly within their mandated authority and technical expertise.
Accordingly, I would affirm the order of the Appellate Division.
Order reversed, with costs, motion for a stay denied and case remitted to Supreme Court, Suffolk County, for trial. Question certified answered in the negative.
NOTES
[*] There is a distinction between a motion to amend the pleadings to raise the defense of workers' compensation and a motion to stay a trial pending determination of the availability of that defense by the Workers' Compensation Board. In the former case, if the motion to amend is granted, trial of the common-law action may proceed in normal course and the availability of the bar of workers' compensation will be decided in that action (as was the case in Murray v City of New York 43 N.Y.2d 400); not having sought a stay of the common-law action in addition to an amendment of the pleadings the asserting employer may be held to have waived its right to urge the primary jurisdiction of the Workers' Compensation Board. In the latter case, if the motion for a stay is granted on the ground of primary jurisdiction, trial of the common-law action must be interrupted and postponed.